Good morning. May it please the Court, my name is Brian Starrer from Squire Sanders & Dempsey. I'd like to reserve two minutes for rebuttal, Your Honor. Whatever you have left on the floor. They were always direct sales between the seller, Equatorial, and the buyer, MISC. Really? And what proof do you have of that? Do you have a contract that has both parties as indicated as buyer and seller? You know, buyer is MISC, seller is Equatorial. Do you have something like that? Yes, there's bunker confirmation notes, there's bunker delivery notes, there's tax invoices. Just a minute, you say bunker confirmation notes. What bunker confirmation notes are you dealing with when you say that? There's, attached to the complaint, Judge Smith, there's 22 I saw all of those notes, but I didn't see anything in there that said that there was any contract with the defendant. If you read the bunker confirmation notes, they say right at the bottom You have H? Yes, yes I do. Let's take a look at them. Let's see if I'll give you them on the record. It's 1-2021 as an example. Bunker confirmation. So this is in the Excellence Record? Yes, it's in the Excellence Record under number 1, page 21. What language on that page? I don't have it. Where in the Excellence Record? Which volume of the Excellence? It's in volume 3 of 3. Volume 3 is tabbed. It has little tabs there. And there's a tab under number 1. Okay. And if you go to 21, I just picked 21 because it 1-21 under tab 1? Yes, sir. Okay. All right. This is a standard arrangement that's done in the maritime business on how bunkers are purchased, negotiated and purchased virtually everywhere in the world, Singapore being no exception. What happens is there's a broker. Point me to the language, would you, that you say says the defendant is a part of a contract? Buyer, Malaysia, MISC, seller, Equatorial. Terms and conditions of the seller under terms. Compass is your client, right? I'm sorry? No. Equatorial is my client. Equatorial, not Compass. Not Compass. Compass is an independent broker. What does Compass do for you if Compass is not your client? What this does for me is it sets up the bunkering of a particular ship. In this case, the Bunga Teratiduta. You remember when we started, you said this was a direct purchase contract between the ship owner and your client. And I said, show me the document that shows that. And I think Judge Smith was asking the same question. And I'm willing to bet Judge Fernandez is curious about that as well. So we're all sitting here waiting for you to point us something that shows your client as a party and MISC as the other party. And I don't see your client on here at all. So under this, if I can explain the course of dealings and how every Bunga transaction is done in the world, I think you'll see. And this is based on your experience? Or is this some expert affidavit in the record that explains this? It's based on both, Your Honor. I've been practicing maritime law for 37 years. That's all I've practiced for 37 years. I've had a number of these Bunga cases. I mean, if you want to qualify as an expert, I think I'm going to have to let Counsel Lord hear you. You'd better come up with something better than that. No, no. I'm going to come up with something better than that, Your Honor. The course of dealings. Let me go back just to make sure I understand. Look, if I'm being sued by my landlord and my landlord takes me to court and says, look, we have a contract, he comes up with a piece of paper that has terms, you know, written there. And somewhere at the bottom is my name and signature and his name and signature. And, you know, I'm sort of a simple country guy. And that's sort of what a country, you know, in my part of the world, that's what a contract looks like. I realize that things are different in the maritime world, you know, because ships are, you know, I understand that things are different. Still and all, you need to have a contract. If you don't have a contract, you don't have a claim. And if you don't have a claim, you can't foresee reattachment. So what you really need to prove up here is reasonable showing a prima facie case, at least, of a contract. And I don't see anybody's signature on here. I don't see anything that, I mean, specifically what you need is something that MISC has signed on to or was gotten from their files or somehow binds MISC to this situation. Coming up with a piece of paper generated by somebody else who's not here that happens to have these two names on the piece of paper doesn't really help you. You were involved in an appeal in polar shipping a number of years ago. And it talked about the transactions of how a bunkering operation is done. Using a bunker confirmation note. And in that holding of the court, I think Judge McKeon, McKinnon wrote the opinion. McKeon wrote the opinion. In that case, it takes the same scenario. There they find that a course of dealings wasn't enough, but they talk of the course of dealings of how bunkering is done. And there you found the contract. And how did you find the contract? You found the contract by the bunker confirmation note incorporating the terms and conditions of equatorial. And in that case, it was a different bunker supplier. But in our case, it's equatorial. If you look at the bunker confirmation note, you'll see exactly the same thing here. You'll see that there's a that there's a confirmation at the bottom under the under the terms. Seller supplier general terms and conditions to apply in polar shipping. You found exactly exactly the same. Where were you really from under? If you come down on the left hand side, you'll see terms. Right. And then and then when you look at sellers, sellers slash general terms and conditions to apply. And then if you go to page. What does that mean? Slash usually means or. So it says either the sellers or suppliers general terms and conditions apply. Is that what slash means? Yeah. Yeah. So sometimes when one of the other applies, we don't know which one it is. We only know that all we know is that compass sent a memo to its file saying this is what happened. You know that the that the sellers slash suppliers terms and conditions apply. That's now how how do we how do we know that? Because there's a bunker delivery note. That's that when they when the when the oil moves from the from the barge of the seller or the supplier to the ship. That's when title passes. Well, let me let me kind of let me kind of interrupt here. As I understand it, from reading the complaint and reading the record, the defendant denies ever receiving or having any knowledge of bunker confirmation notes as these were prepared by compass or ocean. And sent to you, your client. So they were never prepared or sent to the defendant. The defendant received. They admit they received the bunker delivery notes confirming receipt of the bunkers from grander trading and services, but not from your client. They never received any of your client's tax notices sent to compass or to ocean. And they contracted with one entity, M.A.L. So how do I put them into this contract that you suggest these documents are? Because that seems to me to be the bigger point. They didn't ever get the documents you want me to say is the contract. They didn't ever get anything except a bunker delivery note from grander. And now you want me to put them in a contract they never got. Bunker, first let me, if I am, I noticed I'm almost out of time. The first point is. You're actually over. When you get in red, you're in deficit spending. The bunker delivery note of grander is nothing more than the supply arm of equatorial. Equatorial and grander are owned and operated by the same organization. Now, how do they know they're in contract is because the broker that negotiated it in between said that the terms and conditions of the seller apply. And the terms and conditions everyone in this industry are aware of. Well, let me just say I have not heard an answer to this question. I mean, you say these things were sent back and forth, but they were never sent to the party. You're not trying to hold. What if this said buyer, Alex Kaczynski, Ninth Circuit, and these things were sent around just the same way. Would I be liable for twenty two million dollars of bunker? Well, because they happen to put it on a piece of paper that was never sent to me. I never signed on to it. But it's not it. That's not the that's not the trade. You represent me. That's not the way it's done. The way it's done is is with a broker is with a broker in the middle. And that broker in the middle negotiates with the seller and negotiates with the with the supplier. And and the supplier puts. But you said this was a purchase directly from the ship owner to the seller. Now you're telling a completely different. No, no, I'm not. No, I'm not. Twelve and a half minutes ago. Your Honor, I'm not. The the only the only place the title passed was between Equatorial and M.I.S.C. And that passed when that oil went over the rail onto the onto the M.I.S.C. ship. That's that's it. There's no other. There's no other contract. There's no other. There's no other arrangement. We don't know. We didn't know until the rule E hearing that day that there was that there was a contract between M.A.L. and M.I.S.C. It's possible to buy something from a broker and have the buyer be in contractual relationship only with the broker, even though the broker doesn't actually supply the oil. You know, I make a deal with a broker and I say, you know, you deliver me X at a certain price where you get it. I don't care. You and I have a deal to deliver oil. You deliver the oil or you deliver the grain or you deliver the pork bellies or you deliver, you know, two truckloads of cement for me to do in addition to my house. And the trucks show up. I have a deal with a broker and he then goes out and finds cement or grain or whatever in the market. Doesn't mean I have a deal with a cement company. I mean, if I did, I would owe the broker money because I have an actual deal. And I owe the guy who bought the cement in addition to that even because the broker didn't pay, which is exactly what's going on here. What's going on here is the title only passes. Why isn't the answer is that your client made a bad deal by extending credit to a broker that wasn't good for it. And it took the risk in dealing with a dealing with with an agent that that went belly up. And if it had wanted assurances that the ship owner behind it, it would have gotten sent notice. I know there's no sort of notice sent here to misc of any of this stuff or even gotten misc to sign off on it. Your Honor, there was there was never. This is an important lesson learned expensively. There was never any any credit extended to the broker. There was credit extended to one of the largest shipping companies in the Far East. M.I.S.C. Equatorial would not ever, ever deliver oil based on any arrangement with extending credit to to Compass Ocean. And maybe next time it'll actually get a signature or next time it'll actually send a notice. Do you have anything showing that anything was sent to the defendant that that your client or any of its agents sent anything to defend and saying we are delivering this oil and you are on the hook? I mean, never mind that. You know, we have this actual signature saying we agree, but even just giving a notice of that. Your Honor. Anything in the record? Yeah. And in M.A.L.'s and M.A.L.'s record, there's actual there's actually showing a payment by by by M.A.L. for and on behalf for and on behalf of of M.I. M.I.S.C. Well, my worry about that is that I read your your pleadings all the way through and tried to find something in there under this heightened pleading standard that we have under these rules. And I didn't see any agency relationship pled. And furthermore, I didn't see any quantum Merowith theory pled. Your Honor. First on the on the. I mean, you're arguing now an agency relationship. That wasn't pled. We didn't know about the agency until we had 24 hours after the ruling hearing was called. It's the first time the first time at the ruling hearing we see this contract. Equatorial had no knowledge whatsoever of any arrangement between M.A.L. and M.I.S.C. No, no, no idea. And we have no idea today whether they're in fact bankrupt. What what you have to look at in that M.A.L. contract. And you have to ask your question. Your question. Why do they have. Why does M.I.S.C. have complete indemnity. Why can they reject the contract with M.A.L. at any time. Look at the look at the affidavit that the court seems to be relying upon of of Noreen Abraham. She was not even the general manager at the time. She says that she signed it. That affidavit is very suspect. All is all is we have to prove in in in in carrying our burden under rule B is the is the requirement that we show a valid prima facie case. Not that it's going to be successful. Not that not that we're going to win. It's just enough to carry it. So we can so we can go we can go forward. Aqua Stoly is very is very clear on that. And this heightened standard is a heightened standard. Another another even numbered circuit. I'm sorry. Another even numbered circuit. That's the second. That's the second circuit. But it's been adopted right in in in the fifth circuit in the 11th circuit. It's actually a very good question as to what the standard is as to whether a prima facie case is enough or whether the district court. And we've never never ruled on this. It strikes me as if you're going to hold a ship in port that you need something a little more than planes coming in saying, gee, if I have a, you know, prayer of winning. It seems to me you need something a little bit more than that. Particularly this judge. If we're viewing what the district judge did. Well, you're a district judge entitled to some deference on this. Here you not only have the allegations in the complaint, but you have 22 sets of documents showing showing the showing the confirmation, showing the delivery, showing the tax invoice, showing the terms and conditions and showing the correspondence between the between the broker and Equatorial. And this is how I think we're entitled, Your Honor. You're way over your time. Thank you. Thank you. Thank you. Good morning, Your Honors. Elizabeth Beasley on behalf of MIS-CBRA-HAG. Ms. Estera used up nine minutes of your time. Yes, he did. I talk very quickly, so I'll. Do you like what you've heard today? I do like what I've heard today. And perhaps I'd invite the Court for questions. Maybe you should let me finish. I'm sorry. Do you think there's anything that isn't that you need to add to what's said in your brief? There were only two matters that I would like to address to the Court. One is something that was not contained in our brief, and that focused on the Central District Local Rule E-9. And Central District Local Rule E-9 contemplates that an E-4F hearing is an adversary proceeding. And I think that lends credence to the district court's decision to entertain evidence at the E-4F hearing. I appreciate the Court's raising the issue as it applies to whether there's a pleading standard for purposes of establishing a prima facie case or whether the Court is allowed to. The second circuit's rule is to the contrary. Is that fair to say that the Acquistole rule is to the contrary, or would you? I would disagree with that. And I would direct the Court to a post-second circuit case called Williamson. And that case explains the Acquistole case. And the cite on that is 542F3rd43. And what the Williamson, as opposed to Wilhelmson, and there is some – there are two cases, so I just want to make sure that the record is clear. The Williamson case makes clear that Acquistole did not endeavor to set the standards by which the district court may evaluate a motion to vacate. And what the Williamson court said is that the district court can vacate an attachment if the Rule B requirements are not met, noting that if – I mean, seriously speaking, what I said about, you know, obviously what other circuits that are maritime circuits do is quite important. I mean, what the 5th Circuit does, what the 11th Circuit, what the 2nd Circuit do is obviously much more important than, let's say, what the 8th Circuit does. Sure. Or the 10th Circuit in maritime Law. So we do want to be consistent. So your view is that the second circuit rule leaves it up to what? The discussion of the district judge? It absolutely leaves it up to the district judge. And what's critical in the Williamson case is they had a hearing and the court allowed affidavits and evidence which showed that there was no contract between the parties. And on that basis vacated the attachment. So the Williamson court postdates Acquistole. It's in the 2nd Circuit. And it finds and it admits the competing contracts. And then your argument is that the central district local rule is consistent with Williamson. That's my argument, sir. Okay. Thank you. That was it? Obviously I have plenty to say, but I appreciate it. On the facts before the court, as a matter of law, there was no contract, not that there's a dispute about it. Is that correct? That's correct. I think under either the pleading standard or the higher evidentiary standard, the district court was correct in concluding that the plaintiffs had not met their burden to show cause why the attachment should not be vacated. And it's important, obviously, for the court to recognize that it's plaintiffs' burden to show cause and that oftentimes a judicial officer is faced with what would be a preliminary pleading. And that is that ex parte application obviously is without notice and without opposition, which is why the Federal rules, in order to affect due process, make it incumbent upon the plaintiff to show cause. And in this case, the plaintiff failed on a pleading standard and on an evidentiary standard to show cause why the attachment should not be vacated. Judge Fairbank did take evidence here. Yes, sir. But she ruled in the alternative. I see. So, okay. So she ruled that on the pleading, she would find the complaint deficient. And then she ruled in taking the evidence into account, she would also find that the plaintiffs failed to show cause and meet their burden to establish a pre-malfection case. Okay. Thank you very much. Thank you, Your Honors. The case is argued with stance submitted.
judges: Kozinski, Fernandez, Smith N. R.